[Civ. No. 42902. Second Dist., Div. Five. Aug. 30, 1974.]

TRANSIT CASUALTY COMPANY,
Plaintiff, Cross-defendant and Appellant, v.
HARRY ROBERT GIFFIN et al.,
Defendants, Cross-defendants and Respondents;
ELROY E. SIMMONS et al.,
Defendants, Cross-complainants and Respondents.

## COUNSEL

Veatch, Carlson, Dorsey & Quimby, Veatch, Snow, Carlson, Dorsey & Quimby, Frederick C. Quimby, Jr., and Herbert F. Blanck for Plaintiff, Cross-defendant and Appellant.

Thomas Moore and Albert E. Nelson for Defendants, Cross-complainants and Respondents.

Coyle, Dunford & LePera, Phillip R. Marrone, Ellis J. Horvitz and Arthur E. Schwimmer for Defendants, Cross-defendants and Respondents.

## OPINION

**STEPHENS, Acting P. J.**—This appeal is taken from a declaratory judgment in which the superior court determined the respective obligations of two insurance companies by resolving what rights, liabilities, and responsibilities had been created by an insurance policy issued by appellant, Transit Casualty Company. Although there is no substantial disagreement regarding the basic facts of the present action, appellant contends that the trial court erred in its construction of the insurance policy and in its finding of sufficient evidence to sustain a judgment in favor of respondents, Allstate Insurance Company, Harry Giffin, and Elroy and Ethel Simmons.

On or about December 31, 1968, appellant issued to respondent, Harry Giffin, a motor vehicle liability insurance policy which covered a 1961 GMC 10-wheel dump truck purchased by Giffin on December 26, 1968.[1] Giffin, who was an independent truck owner and driver, initially utilized his truck in the performance of several short jobs and for his transportation in each instance to and from work. On January 12, 1969, however, Giffin commenced a job with the Los Angeles Flood Control District in Glendora

[1]Giffin also owned a pickup truck which was not insured and which, incidentally, was inoperable at the time of the accident here involved.

which was of longer duration and which required the hauling of mud, rock, and debris out of a flood control basin. Giffin again used his truck for personal transportation to and from the job site. Reference is made to the G.M.C. being parked at a gas station. Regardless of whether the G.M.C. was parked at the jobsite itself or at a gas station near the jobsite, we refer to the place of parking as at a gas station. In the process of performing the work required, the mud and other debris collected on the undercarriage of the truck, and (as there were no facilities for cleaning the truck at the job site), the mud which remained on the undercarriage was scattered along the city streets of Glendora, a necessary part of Giffin's route from the job site to his home in Pasadena. The Glendora police warned Giffin that if he continued to drive the truck through the city in such a condition, legal sanctions would be imposed. To avoid this penalty, Giffin decided to park his truck at a gas station near the flood control basin when he concluded work each day and to use other transportation between the station and his home.

On February 8, 1969, after completing work for that day, Giffin parked the truck at the gas station and continued the drive to his home in Pasadena in a 1964 Plymouth automobile owned by his friend, George Carter.[2] While Giffin was driving home in the Plymouth, the car collided with a 1962 Oldsmobile operated by respondent Elroy E. Simmons and occupied by respondent Ethel B. Simmons. The 1962 Oldsmobile was insured under a policy issued by respondent Allstate Insurance Company, and containing an uninsured motorist clause.

The principal issue involved in this controversy is the construction to be given the temporary substitute automobile clause contained in the policy issued by appellant to Giffin covering the 1961 GMC dump truck.[3] Appellant contends that this clause does not apply in the present case as the GMC truck had not been "withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." An analysis of this contention requires two separate inquiries: (1) was the covered vehicle withdrawn due to one of the stated incapacities; and (2) was the covered vehicle withdrawn from *normal* use.

Although a contract must be interpreted as written and, consequently, no ambiguity will be found where none exists (*Ogburn* v. *Travelers Ins. Co.,* 207 Cal. 50, 53-54 [276 P. 1004]; Couch on Insurance (2d ed. 1964) § 15.82), a substitute coverage clause in an insurance contract

[2]Apparently this car was not under an automobile liability insurance policy.

[3]The clause reads: "Temporary Substitute Automobile—Under coverages A, B and division 1 of coverage C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

is for the benefit of the insured (*Allstate Ins. Co.* v. *Roberts,* 156 Cal. App.2d 755, 758 [320 P.2d 90]) and thus should be construed to achieve that end. (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.*, 9 Cal.App. 3d 508, 518 [88 Cal.Rptr. 246]; see *Wildman* v. *Government Employees' Ins. Co.,* 48 Cal.2d 31, 35-36 [307 P.2d 359]; *Hardware Mutual Casualty Co.* v. *Home Indemnity Co.*, 241 Cal.App.2d 303, 306 [50 Cal.Rptr. 508].) The purpose of a substitute vehicle provision is not to narrowly limit or to defeat coverage, but rather is to make coverage reasonably definite as to the vehicle normally used while permitting an extension of coverage to protect the insured when the described vehicle is temporarily out of commission. (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co., supra,* at p. 518.) However, as stated by Couch, *supra* (§ 45:226, at pp. 264-265): "In order for the substitute vehicle to be covered, it must be shown, under the terms of the 'substitution' provision, that the described vehicle has been withdrawn from normal use because of its 'breakdown, repair, servicing, loss, or destruction.' Where a substitute automobile clause provides for the coverage of a substituted vehicle when the covered vehicle is withdrawn from normal use because of its condition, there is no coverage where an employee substitutes his car in the absence of proof of circumstances justifying such action." (Fns. omitted.)

In the instant case the trial court found that the GMC truck was withdrawn from normal use because of an incapacity which brought the substitute vehicle clause of Giffin's policy into operation.[4] Although we are aware that the substantial evidence rule governs appellate review of the evidence supporting the trial court's findings (*Clark* v. *Gibbons,* 66 Cal.2d 399, 402 [58 Cal.Rptr. 125, 426 P.2d 525]; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Still* v. *Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 384 [98 Cal.Rptr. 414]), we are of the opinion that the present action constitutes that rare case in which the evidence is not sufficient to support the trial court's findings. (See 6 Witkin, Cal. Procedure (2d ed.) §§ 252-253, at pp. 4243-4245.)

On appeal respondents have argued that the GMC truck was parked at the gas station for "servicing" and thus the Plymouth was a "temporary substitute vehicle" within the meaning of Giffin's insurance policy with appellant. However, a review of the record provides no basis which supports this contention. The undisputed evidence shows that Giffin parked the GMC truck at a gas station near the job site because the station was a convenient location at which Giffin could exchange vehicles for the drive

[4]The trial court in its memorandum decision specifically held: "[B]ecause of its propensity to litter, the truck had to be withdrawn temporarily from its normal use and the Carter automobile substituted for it."

home. Although Giffin left the truck parked in this manner each day due to the warnings issued by the Glendora police with respect to the condition of the truck, this activity does not obviate the fact that the truck was *not* in the station for "servicing." Despite respondents' assertion that Giffin's truck was in need of servicing, the substitute vehicle clause would only come into effect if Giffin had intended to leave the truck at the gas station for that purpose. (See, e.g., *Sanz* v. *Reserve Ins. Co.* (Fla.App.) 172 So.2d 912 (vehicle withdrawn for servicing when relinquished to a sign painter to have the business name painted on the vehicle).) There is no evidence in the record, however, which indicates that Giffin intended to have his truck serviced and thus to withdraw it from normal use when he left it parked at the gas station each day.

We are also of the opinion that the truck was not withdrawn from normal use due to breakdown. Although it is not necessary that a vehicle be inoperable to be considered withdrawn from normal use due to breakdown, the vehicle must be dangerous to operate in its present condition. (Appelman, Insurance Law and Practice, § 4293.5.) A "breakdown" occurs when the vehicle's tires are unfit for normal use (*Fullilove* v. *U. S. Casualty Company of New York* (1960) 240 La. 859 [125 So.2d 389]; *State Farm Mutual Automobile Ins. Co.* v. *Lietz* (1970) 122 Ga. App. 596 [178 S.E.2d 218]; see collected cases in 34 A.L.R.2d 938, 949 and later case service), but does not occur when the vehicle has no heater (*State Farm Mutual Automobile Ins. Co.* v. *Lietz, supra*), when the vehicle is low on gas (*Ransom* v. *Fidelity and Casualty Co. of New York* (1959) 250 N.C. 60 [108 S.E.2d 22]), or when the substitute vehicle is used as a matter of preference rather than as a result of a dangerous condition which exists in the covered vehicle. (Couch, *supra,* § 45:227.) In the present case, Giffin's use of the Plymouth was *not* the result of a "breakdown" in the truck, as the presence of mud on the undercarriage did not make the truck dangerous to operate or inoperable. Further, the condition of the truck was such as to dispel any reasonable belief that the use of another vehicle as its substitute would be covered.[5]

Respondent Allstate Insurance Company argues that the G.M.C. "was practically or constructively 'lost' within the purview of the temporary substitute automobile clause because it could not lawfully be used on the streets of Glendora . . ." This contention is totally without merit and requires no further discussion in view of our foregoing analysis and holding that the Plymouth did not constitute a "substitute" vehicle.

Thus, it is obvious from the facts that Giffin elected to use the Plymouth

[5]The case of *Hames Ready Mix, Inc.* v. *Transit Casualty Co.,* 260 Cal.App.2d 173 [66 Cal.Rptr. 898] is relied upon by respondent. We see no similarity between *Hames* and the instant case.

as a convenience only to commute to and from work rather than take affirmative action to remedy that condition of the truck which potentially threatened Giffin with a littering citation by its continued operation in the City of Glendora. This preference by Giffin was not sufficient to "withdraw the vehicle from normal use" due to a stated incapacity, nor to extend policy coverage to include Giffin's use of the Plymouth. To hold otherwise would conflict with the plain meaning of the language in the Temporary Substitute Automobile Clause.

Since we find that the GMC truck was not withdrawn from normal use due to one of the stated incapacities set forth in Giffin's insurance policy with appellant, we do not reach the question of whether the vehicle was withdrawn from *normal* use.[6]

The judgment is reversed.

Ashby, J., and Hastings, J., concurred.

Petitions for a rehearing were denied September 24 and 26, 1974, and the opinion was modified to read as printed above.

---

[6]See *State Farm Mut. Auto. Ins. Co.* v. *Johnston,* 9 Cal.3d 270, 275-276 [107 Cal.Rptr. 149, 507 P.2d 1357].