EMCASCO INSURANCE COMPANY, Prudential Insurance Company, and Farmers Insurance Group, Plaintiffs and Appellees,

v.

L & M DEVELOPMENT, INC., also known as Wyngate, Inc., Defendant,

and

AID Insurance Company (Mutual), Garnishee and Appellant.

Civ. No. 10807.

Supreme Court of North Dakota.

Aug. 15, 1985.

---

Dosland, Dosland & Nordhougen, Moorhead, Minn., for plaintiffs and appellees; argued by Duane A. Lillehaug, Moorhead, Minn.; appearance by Colleen J. Saande, Moorhead, Minn.

Nilles, Hansen, Magill & Davies, Fargo, for garnishee and appellant; argued by Duane H. Ilvedson, Fargo.

GIERKE, Justice.

AID Insurance Company (AID) has appealed from a district court judgment in favor of the plaintiffs in an action to determine whether or not an insurance policy issued by AID to L & M Development, Inc., also known as Wyngate, Inc. (Wyngate), afforded coverage for a property damage claim against Wyngate. We affirm.

Wyngate hired independent contractors to construct townhomes which Wyngate later sold. After Wyngate sold the townhomes, shingles blown off the townhomes in a windstorm broke windows, damaged screens, and marred siding. Pursuant to homeowner's insurance policies issued by the plaintiffs to the owners of the townhomes, plaintiffs compensated their insureds for the damages to the townhomes.

The plaintiffs brought a subrogation action against Wyngate, alleging that Wyngate breached express and implied warranties that the townhomes were constructed in a good workmanlike manner, reasonably fit for continued habitation, and free from defects. During the pendency of that action, Wyngate tendered to AID the defense of the action. AID denied coverage and refused to defend. Wyngate and the plaintiffs entered into a settlement agreement providing that the plaintiffs would collect damages, if any, only under the insurance policy issued by AID to Wyngate.

The trial court determined that the insurance policy afforded coverage for the underlying property damage claim and judgment was entered in favor of the plaintiffs. The issue on appeal is whether or not the comprehensive general liability insurance policy issued by AID to Wyngate affords coverage for the underlying property damage claim.

The insurance policy in issue provides:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A.  bodily injury or
Coverage B.  property damage

to which this insurance applies, caused by an occurrence, ...

"Exclusions

This insurance does not apply:

"(a) to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;* [Emphasis added.]

\* \* \* \* \* \*

"(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; ..."

Of the identical underscored language in exclusion (a) in a similar policy, we said in *Applegren v. Milbank Mut. Ins. Co.,* 268 N.W.2d 114, 118 (N.D.1978):

"... This clearly means that the policy covered and applied to the insured's warranties that the work would be performed in a workmanlike manner. We can reach no other conclusion."

AID argues that exclusion (a) relates only to those situations where an insured assumes liability under a hold harmless or indemnity contract; that the two exceptions to the contractual liability exclusion relate to the exclusion only; and that exclusion (o) clearly excludes coverage for property damage to the work performed by the named insured.

We construed identical exclusions (a) and (o) in *AID Ins. Services, Inc. v. Geiger,* 294 N.W.2d 411 (N.D.1980). After adopting the reasoning and conclusion in *Applegren v. Milbank Mut. Ins. Co., supra,* we stated:

"What Aid Insurance gives to Geiger in the form of coverage pursuant to the exception to exclusion (a), it purports to take away through the provisions of exclusion (o), the 'business risk' exclusion. The two exclusionary clauses are irreconcilable and patently ambiguous.... We believe that exclusion (a) is in conflict with exclusion (o) and therefore an ambiguity exists.

"... [I]t is well-established in North Dakota that, because an insurance policy is a contract of adhesion, any ambiguity or reasonable doubt as to the meaning of the policy is to be strictly construed against the insurer and in favor of the insured. If the language in an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted. Section 9–07–19, N.D.C.C., provides in part:

'In cases of uncertainty not removed by the preceeding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, ...'

"We conclude that uncertainty does exist in the present case and the language of exclusion (a) is susceptible to a construction which will impose liability on the insurer, Aid Insurance, and afford coverage to the insured, Geiger. The coexistence of exclusionary provisions (a) and (o) creates, at the very least, an ambiguity which must be resolved in favor of the insured so as to provide coverage. Insurance contracts are unipartite in character. They are drafted by company experts learned in the law of insurance. Insurance policies should be written so that an ordinary layperson untrained in the field of insurance, can clearly understand them and know whether or not coverage is afforded. If they are not so written, the insurance company must assume the consequences of the ambiguity and resulting confusion." [Citations omitted.] *AID Ins. Services, Inc. v. Geiger,* 294 N.W.2d at 414–415.

Asserting that counsel in *Geiger, supra,* did not adequately inform us of the insurance industry's intent in exclusions (a) and (o), AID asks that we overrule *Geiger.* We decline the invitation and adhere to the rationale and conclusion adopted in *Geiger.*

Whether we construe the exception to exclusion (a) as granting coverage for breach of warranty or as excepting breach of warranty from the application of the exclusion for contractual liability, thereby leaving breach of warranty within the coverage grant, which is "broad enough to include the insured's obligation to pay damages for breach of contract as well as for tort," [G. Tinker, *Comprehensive General Liability Insurance—Perspective and Overview*, FIC Quarterly 217, 265 (Spring 1975)], coverage of damages arising out of a breach of warranty is clearly and specifically provided and it is not overcome by the general language in exclusion (*o*), which does not mention warranties. "The insurer has the duty to define, in clear and explicit terms, any limitations or exclusions to coverage expressed by broad terms." 2 R. Long, *The Law of Liability Insurance* § 10.05 (1985).

If AID intended to exclude coverage for damages arising out of a breach of warranty, the language employed in exclusions (a) and (*o*) is not well suited for accomplishing that intention. While our construction of exclusions (a) and (*o*) may represent a minority position, we note that we are not alone in holding that damages arising out of a breach of warranty are covered by the policy. *See e.g., Federal Ins. Co. v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976); *Baybutt Constr. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914 (Me. 1983); *Fresard v. Michigan Millers Mut. Ins. Co.*, 97 Mich.App. 584, 296 N.W.2d 112 (1980); *McRaven v. F-Stop Photo Labs, Inc.*, 660 S.W.2d 459 (Mo.App.1983); *Commercial Union Assur. Companies v. Gollan*, 118 N.H. 744, 394 A.2d 839 (1978).

We disagree with AID's assertion that our construction of the liability policy in *Geiger* transformed a liability policy into a performance bond. The parties generally protected by liability insurance policies and performance bonds are different and the events giving rise to liability for payment are different. See *Commercial Union Assur. Companies v. Gollan, supra.*

AID argues that the liability policy involved in the instant case is fundamentally different from the one in *Geiger* because, unlike the policy in *Geiger*, the policy involved here does not include "completed operations hazard" coverage, and that this difference requires a different result. Our decision in *Geiger* did not turn on the presence of completed operations coverage. The meaning of the exception to exclusion (a) does not depend upon the availability of completed operations coverage, which might have been, but was not, purchased. Coverage for damages arising out of a breach of "a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner" is clearly and specifically provided and is not overcome by a failure of the insured to also purchase completed operations coverage. Nor is clear and specific coverage for breach of the warranties recited in the exception to exclusion (a) overcome by an exclusion of property damage included within the "completed operations hazard", which is defined in the policy without mentioning the warranties recited in the exception to exclusion (a). Limitations or exclusions from broad coverage must be clear and explicit. 2 R. Long, *supra.* An insurance company must assume the consequences of ambiguity and confusion. *Geiger, supra.*

Judgment affirmed.

ERICKSTAD, C.J., VANDE WALLE and MESCHKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.