ALL SEASONS WATER USERS ASSO-
CIATION, INC., Plaintiff, Appellant,
and Cross-Appellee,

v.

NORTHERN IMPROVEMENT COMPA-
NY and Firemen's Insurance Company
of Newark, New Jersey, Defendants,
Appellees, and Cross-Appellants.

and

CERTAIN–TEED CORPORATION, De-
fendant and Third-Party Plaintiff,

v.

KBM, INC., Third-Party Defendant.

Civ. No. 11,256.

Supreme Court of North Dakota.

Jan. 6, 1987.

Jack G. Marcil (argued) and Maureen Holman of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff, appellant, and cross-appellee.

Maurice G. McCormick (argued) and Pamela J. Hermes of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendants, appellees, and cross-appellants.

VANDE WALLE, Justice.

All Seasons Water Users Association, Inc. (All Seasons), appealed from the amended judgment of the district court of Bottineau County which awarded All Seasons $105,372 in damages plus $5,798.48 for costs and disbursements. Northern Improvement Company (Northern) and Firemen's Insurance Company (Firemen's) filed a cross-appeal. We affirm in part and remand the case for further consideration by the trial court.

This appeal arises out of a contract entered into between Northern and All Seasons in which Northern agreed to construct and install a rural water pipeline for All Seasons. During the summer of 1977, pursuant to the contract, Northern installed approximately 425 miles of plastic pipe in Bottineau County. The plastic pipe was generally in 40–foot lengths, joined together by a solvent-welding technique. Testimony at trial indicated, and the trial court found, that Northern used excessive solvent or solvent cement in the welding process, and that this caused the pipe to be weakened and led to numerous leaks. The contract required the pipe to be buried at a depth of 7.0 feet; however, numerous sections of the pipeline were buried at more shallow depths.

In its complaint, All Seasons asked for $100,000 in actual damages plus an unspecified amount to compensate it for future damage, interest, attorney fees, and costs and disbursements. It asked that the trial court order replacement of 10 miles of shallowly laid pipe, for replacement of 21 miles of pipe which it claimed had been welded in a negligent manner, and for damages for expenses it had incurred in repairing and replacing sections of the pipe. All Seasons also asked that the bond issued by Firemen's be liquidated.

The trial court found that 10 miles of pipe was buried at depths more shallow than the 7.0 feet required by the contract, but stated that the pipe was within an acceptable tolerance and thus did not need to be replaced or lowered. The trial court awarded $70,000 to All Seasons for the cost of replacing 3½ miles of pipe which had been welded improperly. The trial court also awarded $16,000 to All Seasons for pipe it had already replaced, and $19,372 for breaks in excess of 20 per year, which number the court found was acceptable. Upon entry of judgment, All Seasons filed a statement of costs and disbursements, claiming $9,415.84, which the court taxed against Northern. Northern filed an objection to many of the costs and the trial court decreased the amount of allowable costs

and disbursements to $5,798.48, and entered an amended judgment to reflect the change.

All Seasons raises the following issues on appeal:

1. Whether a contractor who breaches a construction contract by violating the contract specifications regarding the depth pipe is to be buried for a rural water system is liable for damages for the shallow pipe.

2. Whether a rural water system is entitled to damages for replacement of 22 miles of pipe which have repeated breaks due to sloppy workmanship.

3. Whether a rural water system is entitled to damages for repair of breaks in the water line when the breaks are caused by sloppy workmanship.

4. Whether a contractor's bond should be forfeited as liquidated damages when the contractor breaches the contract and causes significant past and probable future damage.

5. Whether the trial court erred in denying costs for the expenses of expert witnesses.

The trial court made several findings regarding the first issue. It found that 10 miles of pipe is buried above the 7.0-foot depth required by the contract. The court concluded that this constituted a breach of the contract and that Northern was responsible for it. However, the trial court went on to find that the shallowly laid pipe did not need to be replaced or lowered because it was "within an acceptable tolerance." The court also concluded that All Seasons substantially received the system it had intended.

■ This court will not reverse a trial court's finding of fact unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P. Whether or not a contract has been substantially performed is a question of fact. *Robertson Companies, Inc. v. Kenner*, 311 N.W.2d 194 (N.D.1981). Thus the trial court's finding in this regard will not be reversed unless it is clearly erroneous. *Cook v. Jacklitch & Sons, Inc.*, 315 N.W.2d

660 (N.D.1982). A finding of fact is clearly erroneous when the reviewing court considering the entire evidence is left with a definite and firm conviction that a mistake has been made. *Gross v. Sta-Rite Industries, Inc.*, 336 N.W.2d 359 (N.D.1983). Whether or not the contract has been performed must be determined in view of the entire contract and not one specification. *Merrill Iron & Steel, Inc. v. Minn-Dak Seeds, Ltd.*, 334 N.W.2d 652 (N.D.1983).

Testimony at trial indicated that All Seasons had checked the depth of the pipe at approximately 33 locations. Of these, 22 were buried at 6 feet 6 inches or less. However, there was also testimony that changes in topography due to tillage, erosion, and settling could have contributed to a ground cover of less than the contract-mandated 7.0 feet. In addition, testimony by Ronald French, the project engineer for KBM for the pipeline, Robert Aberle of Northern, and John Madden, a consulting engineer, indicates that the pipe did not need to be lowered.

In determining that the 10 miles of pipe did not need to be replaced or lowered, the trial court found that Northern had breached the contract by burying the pipe at less than the contract-mandated depth. But the trial court implied that Northern had substantially performed the contract and that the proper measure of damages is the cost of making the work conform to the contract because the breach can be remedied without substantial reconstruction of the project. However, the court concluded that the pipe which was too shallowly buried need not be replaced or lowered because it is within an acceptable tolerance. This appears to be a holding by the trial court under the substantial performance doctrine.

The doctrine of substantial performance was commented on by this court very early in its history. In *Anderson v. Todd*, 8 N.D. 158, 160, 77 N.W. 599, 600 (1898), we stated:

"It is true that the early rule, requiring a technical and literal compliance with the contract as a condition precedent to re-

covery upon it, has been so modified, in the interest of, and for the protection of, the honest, skillful, and prudent contractor, that he may now recover upon his contract when it appears he has endeavored to perform it in good faith, and according to its terms, and has done so except as to unimportant omissions or deviations, which are the result of mistake or inadvertence, and were not intentional, and which are susceptible of remedy, so that the other party will get substantially the building he has contracted for. In such event the doctrine of substantial performance prevails, and the contractor may recover the contract price, less the expense of repairing the defects and omissions."

However, merely because Northern has substantially performed the contract does not mean that it is not responsible for damages for any breach, however technical, of the contract. *Dittmer v. Nokleberg,* 219 N.W.2d 201 (N.D.1974); *Shimek v. Vogel,* 105 N.W.2d 677 (N.D.1960). Therefore, any finding of substantial performance requires a further inquiry into the amount of damages to which the owner, in this case All Seasons, is entitled due to the contractor's breach.

■ In considering the issue of the damages to which All Seasons may be entitled, there are two possible measures of damages. In a situation where the contractor has substantially performed, if the breach can be remedied without reconstructing a substantial portion of the project, the measure of damages is the cost of making the work conform to the contract. *Gross, supra.* On the other hand, if the defects can be remedied only by reconstruction of a substantial portion of the project, the proper measure of damages is the diminution in value of the project due to the breach. *Gross, supra.*

■ The trial court stated, in its conclusions of law, that the proper measure of damages is the cost of making the work conform to the contract because the breach can be remedied without substantial reconstruction of the project. When the trial court found substantial performance, and then concluded that the proper measure of damages was the cost of making the work conform to the contract, it should have proceeded to determine All Seasons's damages due to Northern's technical breach.

If the trial court determined that the depth of the pipe was so close to the contract-required depth that All Seasons was not entitled to damages, it may have been correct. But we do not know whether or not that was the case because the court did not set forth the reasons for its findings. Rule 52(a), N.D.R.Civ.P., requires findings of fact and conclusions of law to enable the appellate court to understand the factual determination made by the trial court and the basis for its conclusions of law and judgment entered thereon. *Hust v. Hust,* 295 N.W.2d 316 (N.D.1980). Because we do not know the trial court's rationale, we remand on the issue of damages due to the 10 miles of pipe which was too shallowly buried.

■ All Season's second issue concerns damages for the replacement of 22 miles of pipe. All Seasons claims that the trial court erred when it determined that only 3½ miles of pipe needed to be replaced due to faulty workmanship. The trial court based its ruling on its finding that the pipe for which it did not award damages has had insufficient breaks per mile to justify an award. As we have already noted, findings of fact will not be set aside unless they are clearly erroneous.

There was conflicting testimony by various witnesses regarding how much pipe had to be replaced because of excessive breaks due to sloppy workmanship. Mr. French testified that he would replace only 3½ miles of pipe. It was for the trial court to decide credibility of witnesses and merely because there were differing opinions does not mean that the trial court erred by accepting the testimony of one of the witnesses. The court's awarding of damages for 3½ miles of pipe is affirmed.

■ The third issue raised by All Seasons is whether or not the court awarded it

a sufficient amount in damages for repair costs. All Seasons asserts that the trial court's finding that 20 breaks per year is acceptable is clearly erroneous. There was testimony at trial that All Seasons was informed that it could expect a number of breaks per year. Also, John Madden testified that 20 leaks per year is acceptable for a system the size of the All Seasons system. In view of the evidence, the finding that 20 leaks per year is acceptable is not clearly erroneous. Additionally, the trial court's award of $19,372 for the cost of repair for breaks in excess of 20 per year was not clearly erroneous. Therefore, we affirm the trial court's ruling in this regard.

The next issue raised by All Seasons is whether or not the contractor's bond issued by Firemen's should be liquidated. The trial court concluded that the full amount of the bond, as liquidated damages, is not appropriate. The trial court held that Northern had substantially performed the contract. Before a contractor's bond can be liquidated, the breach must amount to a total failure of performance. Section 40–22–31(3), N.D.C.C.; *City of Wahpeton v. Drake-Henne, Inc.,* 215 N.W.2d 897 (N.D.1974), *cert. denied,* 419 U.S. 986, 95 S.Ct. 245, 42 L.Ed.2d 194 (1974). No total failure of performance exists here and the court's ruling denying liquidation of the bond is affirmed.

The final issue raised by All Seasons is whether or not the trial court erred when it reduced the amount of costs and disbursements it taxed against Northern. Although the prevailing party may recover certain costs and disbursements, their reasonableness and necessity is squarely within the discretion of the trial court and will be reversed on appeal only if any abuse of discretion is shown. *Keller v. Vermeer Mfg. Co.,* 360 N.W.2d 502 (N.D.1984). We hold that the trial court did not abuse its discretion, and we thus affirm the trial court's ruling regarding costs and disbursements.

Northern raises as an issue on its cross-appeal whether or not the trial court erred in holding that acceptance of the project by All Seasons did not limit recovery to the one-year warranty period. We agree with the holding of the trial court for several reasons.

Section 7.5 of the contract between the parties in this case provides: "Neither observations by the ENGINEER nor inspections, tests or approvals by persons other than the CONTRACTOR shall relieve the CONTRACTOR from his obligations to perform the WORK in accordance with the requirements of the CONTRACT DOCUMENTS."

Section 7.6 provides: "The ENGINEER and his representatives will at all times have access to the WORK. In addition, authorized representatives and agents of any participating Federal or state agency shall be permitted to inspect all work, materials, payrolls, records of personnel, invoices of materials, and other relevant data and records. The CONTRACTOR will provide proper facilities for such access and observation of the WORK and also for any inspection, or testing thereof."

Section 7.7 provides: "If any WORK is covered contrary to the written request of the ENGINEER, it must, if requested by the ENGINEER, be uncovered for his observation and replaced at the CONTRACTOR'S expense."

Section 12.1 of the contract states in part that "the CONTRACTOR will supervise and direct the WORK. He will be solely responsible for the means, methods, techniques, sequences and procedures of construction."

Section 16.1 provides: "The CONTRACTOR shall promptly remove from the premises all WORK rejected by the ENGINEER for failure to comply with the CONTRACT DOCUMENTS, whether incorporated in the construction or not, and the CONTRACTOR shall promptly replace and re-execute the WORK in accordance with the CONTRACT DOCUMENTS and without expense to the OWNER and shall bear the expense of making good all WORK of oth-

er CONTRACTORS destroyed or damaged by such removal or replacement."

Section 18.2 of the contract provides in part: "If the CONTRACTOR ... repeatedly fails to supply sufficient skilled workmen or suitable materials or equipment, or if he repeatedly fails to make prompt payments to SUBCONTRACTORS or for labor, materials or equipment or if he disregards laws, ordinances, rules, regulations or orders of any public body having jurisdiction of the WORK ·or if he disregards the authority of the ENGINEER, or if he otherwise violates any provision of the CONTRACT DOCUMENTS, then the OWNER may, without prejudice to any other right or remedy and after giving the CONTRACTOR and his surety a minimum of ten (10) days from delivery of a WRITTEN NOTICE, terminate the services of the CONTRACTOR and take possession of the PROJECT and of all materials, equipment, tools, construction equipment and machinery thereon owned by the CONTRACTOR, and finish the WORK by whatever method he may deem expedient."

Regarding payment, Section 20.1 of the contract provides in part: "Any payment, however, final or otherwise, shall not release the CONTRACTOR or his sureties from any obligations under the CONTRACT DOCUMENT of the Performancy Bond and Payment Bonds."

Section 27.1 provides: "The ENGINEER shall act as the OWNER's representative during the construction period. He shall decide questions which may arise as to quality and acceptability of materials furnished and WORK performed. He shall interpret the intent of the CONTRACT DOCUMENTS in a fair and unbiased manner. The ENGINEER will make visits to the site and determine if the WORK is proceeding in accordance with the CONTRACT DOCUMENTS."

These provisions clearly indicate the intent of the parties was that, although Northern had to allow All Seasons and its representatives to inspect the work, Northern was not released from its obligation to conform to the contract specifications regardless of any action by All Seasons.

In *City of Granville v. Kovash, Incorporated,* 118 N.W.2d 354, 359 (N.D.1962), this court stated:

"The great weight of authority holds that a provision in a contract such as the one before us, which makes the engineer or other qualified person the sole judge of the quality and acceptability of the work, is valid and binding on the parties and that the action of the engineer under such contract, approving the work and the manner of performance of the contract, and the acceptance of such approval by action of the governing body of the City is final and conclusive on the parties in the absence of a showing of fraud, collusion, concealment which prevented the discovery of the failure on the part of the contractor to comply with contract terms, or such gross mistake as would imply bad faith on the part of the engineer or failure on his part to exercise honest judgment. [Citations omitted.]

.    .    .    .    .

"If the contract had not provided for the complete supervision of the work by the engineer and had not, in clear and unmistakable language, made the engineer's approval of the work final and conclusive, upon acceptance thereof by the governing body of the City, then the rule that acceptance of a job in ignorance of any defects does not prevent recovery, would apply."

In *Kovash,* the engineer or his inspector, a member of the city council, was constantly on the jobsite, and his inspector walked the entire length of the water system after the trench had been dug and before the pipes were lowered into the trenches. He also walked the entire length of the system again after the pipes had been laid in the trench. No question was raised as to whether or not the trench was of a proper depth until after final acceptance. The facts in this case are quite different.

All Seasons's engineer, KBM, was responsible for inspection of Northern's performance. Yet KBM was not required by

the contract to be on the jobsite constantly. Additionally, the method of connecting and burying the pipe in this case is different from that in *Kovash*. Here, several crews joined 40–foot sections of plastic pipe together by a solvent-welding technique. Testimony indicated that a problem associated with this technique arises when excessive solvent or solvent cement is used and allowed to run down the inside of the pipe. Northern's employees were instructed on the proper technique in joining the pipe, and were solely responsible for properly performing the job. KBM or its agent would necessarily have to be present when the work was done to detect the use of excessive solvent or solvent cement at the time of installation. The record reflects that a substantial portion of the All Seasons pipeline has suffered relatively few breaks, while certain sections have had many breaks. This indicates that whatever caused the problem occurred only in certain areas. Because KBM was not required to be present at all times—and in fact was not present at all times—Northern's use of excessive solvent or solvent cement would remain undetected when KBM was not present. Thus the use of excessive solvent or solvent cement was a latent defect which neither KBM nor All Seasons could have reasonably detected.

Another defect claimed by All Seasons is that some of the pipeline was buried at less than the contract-required depth of 7.0 feet. Again, the peculiar method of burying the pipe may have led to the nondiscovery of this defect until after final acceptance. The pipeline was buried with a plow-type implement which dug the trench and buried the pipe simultaneously. Thus the fact that the pipe was being buried above the contracted depth was not readily apparent, as it should have been in *Kovash*. Also, as we have noted, KBM was not always present during the burying process, and therefore may not have observed the action of Northern. Furthermore, All Seasons did notify Northern of several locations where it knew pipe was buried at less than contracted depth, and Northern claimed that it went back and buried the pipe deeper at these locations.

The contract in this case clearly stated that Northern retained responsibility for conforming to the contract regardless of KBM's or All Seasons's actions. KBM did not constantly watch over Northern to ensure its compliance with the contract, and was not required to do so by the contract. Additionally, the defects were of a type that were not easily discoverable and would manifest themselves only after final acceptance. Therefore, All Seasons's acceptance of the project does not limit its recovery to the one-year warranty period.

Northern also raises on its cross-appeal the issue of whether or not Northern's responsibility for repairs was limited by the contract to the one-year period. There are provisions in the contract which specify that Northern agrees to repair damage or defects for one year.[1] Northern claims that these provisions limit its liability for repairs to one year. Northern appears to be confusing a warranty with the contract-

---

1. Section 5 of the contract provides:
   "MAINTENANCE: The Contractor shall guarantee the repair of all damages [*sic*] or defects due to faulty materials or workmanship done by the Contractor or subcontractors. This guarantee shall remain in effect for a period of one year after acceptance of the project by the Owner according to the General Conditions."
   Section 29.1 provides:
   "The CONTRACTOR shall guarantee all materials and equipment furnished and WORK performed for a period of one (1) year from the date of SUBSTANTIAL COMPLETION. The CONTRACTOR warrants and guarantees for a period of one (1) year from the date of SUBSTANTIAL COMPLETION of the system that the completed system is free from all defects due to faulty materials or workmanship and the CONTRACTOR shall promptly make such corrections as may be necessary by reason of such defects including the repairs of any damage to other parts of the system resulting from such defects. The OWNER will give notice of observed defects with reasonable promptness. In the event that the CONTRACTOR shall fail to make such repairs, adjustments, or other WORK that may be made necessary by such defects, the OWNER may do so and charge the CONTRACTOR the cost thereby incurred. The Performance Bond shall remain in full force and effect through the guarantee period."

ed duty to construct the pipeline in conformance with the contract specifications.

■ Where a contractor fails to comply with the contract, he proceeds at his peril and assumes the risk of any deviations from the contract, in essence, guaranteeing the suitability of the work. *Burke County Public Schools Bd. of Ed. v. Juno Const. Corp.*, 50 N.C.App. 238, 273 S.E.2d 504 (1981).

A warranty or guarantee is basically an agreement to repair or replace the faulty work regardless of the reason for the defect, so long as it is not due to abuse or neglect by the owner. It is clear that the leaks in this case were not caused by any action of All Seasons. Thus any repair of the pipeline required during the first year was the responsibility of Northern. The one-year limit is due to the contract provision which so specifies.

A further duty which all contracts envision is that the contractor conform to the contract. A failure to do so subjects the contractor to liability for damage due to the failure, so long as the action is not barred by the applicable statute of limitation or there is no clear and unequivocal language in the contract which limits such liability.

The trial court found that the failure of the pipe was caused by the use of excessive solvent. In view of the testimony and the evidence the trial court's finding was not clearly erroneous. The contract specifically provided that Northern was to apply the solvent as recommended by the manufacturer. It is clear that it did not do so, and due to that failure to conform by Northern, the pipeline suffered numerous leaks. The contract also required that the pipeline be buried at a depth of 7.0 feet. As we have already held, the trial court's finding that 10 miles of pipe was too shallowly buried was not clearly erroneous.

Although the contract contains warranty provisions, it does not specify that in the event the contract is breached All Seasons's recovery is limited in any respect. In an action for breach of contract the injured party is entitled to such damages as naturally and ordinarily flow from the breach. *Town of T. v. Stapell, Mumm & Beals Corp.*, 240 A.D. 472, 270 N.Y.S. 377 (1934), *affirmed* 193 N.E. 419 (1934). In *Stapell*, the town was held entitled to recover the full amount of damage suffered due to the contractor's failure to comply with contract specifications regarding construction of curbing. The contractor was held liable without limitation in time or amount, even though the contract had a provision by which the contractor agreed to keep the pavement repaired for one year from the date of completion and acceptance.

■ In the present case it is clear that Northern breached the contract in regard to the solvent-welding process and the 7.0–foot-depth requirement. The defects were latent, and thus All Seasons could not have reasonably detected them. If the one-year warranty was to be All Seasons's exclusive remedy, or if actions for breach of contract are also to be limited to the one-year period, the contract should contain clear and unequivocal language to that effect. Therefore, Northern is responsible for repairing damage due to its breach, so long as All Seasons is not barred by the applicable statute of limitation.[2]

2. We do not believe the majority opinion in *City of Wahpeton v. Drake-Henne, Inc.*, 215 N.W.2d 897 (N.D.1974), is contrary to our opinion today. In *Drake-Henne*, the court stated in the Syllabus that "Although backfill compaction was deficient at the time the certificate of completion was signed by the project engineer, the City did not waive compliance with the contract specifications by the engineer's certification of completion and, accordingly, is not barred from recovering for defects resulting from the contractor's failure to perform according to the specifications, when defects were discovered during the one-year period as provided for in I(H)3.(b) of the contract."

In *Drake-Henne*, the court noted that the City had given notice of the defect within one year of acceptance. The warranty therefore was activated and it was the contractor's responsibility to discover how much of its work was defective and to correct it or respond in damages for the defects. The court thus merely held that the notice provisions of the contract had been complied with and the warranty therefore required

Northern also raises several issues regarding damages on its cross-appeal. Northern claims that because the court indicated several miles of pipeline should be replaced, the proper measure of damages was the diminution in value.[3] It claims that this is required because replacement would involve total reconstruction.

Northern appears to be misunderstanding the rule of damages. When substantial reconstruction is required, diminution in value is the proper measure of damages. *Gross, supra.* However, substantial reconstruction refers to the entire project and not just certain portions. To hold otherwise would lead to unusual results. Wherever a contract was breached and any small part was defective and needed to be replaced, rather than replace it Northern would have us hold that diminution in value would be proper. In this case, the amount of pipe that required replacement was not such that it involved substantial reconstruction. Therefore, the proper measure of damages for the 4½ miles of pipe was replacement cost.

Northern also asserts that the trial court's damages award amounted to a double recovery by All Seasons. It claims that to allow damages for repairs in addition to the cost of replacement for the same sections of pipe would be improper.

An award which results in double recovery is not a proper measure of damages for breach of contract. However, in the present case it appears that the award did not result in All Seasons's recovering more than it was entitled to. As the owner of a large system, All Seasons properly repaired leaks as they occurred, thereby keeping the system in operation and maintaining service for its customers. When All Seasons realized that the system would not be remedied by the repairs, it sued for replacement of a portion of the pipeline which continued to suffer numerous leaks. In essence, All Seasons tried to fix the system and when that proved impossible, it sought to have the faulty portion repaired so that the remainder of the system would not be burdened by the portion which acted as the weak link in the chain. The trial court's action in awarding damages for repairs and replacement of the same section therefore was not clearly erroneous. A different result might be required if the trial court had awarded damages for replacement and for *future* repairs of the same section. However, that was not the trial court's ruling, and we therefore affirm the trial court's holding on damages in this regard.

Additionally, the leaks, in the section of pipe which the trial court ordered replaced, occurred over a period of years. All Seasons tried to minimize damages by repairing the leaks as they occurred rather than replacing sections of the pipeline. After a few years, a pattern developed whereby certain sections suffered a disproportionate number of leaks. Then it was apparent that replacement would be the proper course of action. Thus All Seasons did act reasonably, and the trial court did not err in its award of damages.

We remand to the trial court for the purpose of determining the damages, if any, which All Seasons is entitled to recover for the 10 miles of shallowly buried pipe. In all other respects the judgment of the

the contractor to repair damage due to a latent defect which continued to manifest itself after the expiration of the warranty. In the present appeal, Northern was responsible for, and in fact made many, repairs during the first year after final acceptance. It should have realized what was wrong with the pipe because it did the actual repair and should have seen the defective welding. Therefore, it cannot claim that All Seasons had a duty to find the cause of the leaks during the first year.

Additionally, in *Drake-Henne,* the court never reached the issue we have reached in this case, namely, that the contractor is responsible for breaches of contract after the expiration of a one-year warranty period, in the absence of clear and unequivocal language to the contrary.

3. Northern presumably raises this point because the trial court held that testimony regarding diminution in value was "speculative, without foundation and therefore rejected." However, the court went on to hold that diminution in value was not the proper measure of damages when substantial reconstruction was not required. We agree with the trial court.

trial court is affirmed. No costs on appeal are awarded to any of the parties.

MESCHKE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

ERICKSTAD, C.J., concurs in the result.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.