**FARMLAND MUTUAL INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**FARMERS ELEVATOR, INC. OF GRACE CITY; Farmers Trucking, Inc. of Grace City; Larry O'Brien; Scanson Trucking; and Great West Casualty Company, Defendants and Appellees,**

and

**State Farm Mutual Automobile Insurance Company, Defendant and Appellant.**

Civ. No. 11308.

Supreme Court of North Dakota.

April 16, 1987.

period of time for which such person might have been sentenced."

Lamb, McNair, Larson & Carlson, Fargo, for plaintiff and appellee.

Pearson & Christensen, Grand Forks, for Farmers Trucking, Inc. of Grace City and Larry O'Brien; Ronald F. Fischer (argued).

Traynor, Rutten & Traynor, Devils Lake, for Scanson Trucking & Great West Cas.

Cahill & Maring, Moorhead, Minn., for defendant and appellant; Steven L. Marquart (argued).

ERICKSTAD, Chief Justice.

State Farm Mutual Automobile Insurance Company (State Farm) appeals from a summary judgment requiring it to defend and indemnify Farmers Trucking, Inc. of Grace City (Farmers Trucking) against all claims and liability arising out of an accident and requiring it to pay Farmers Trucking attorney fees pursuant to Rule 11, N.D.R.Civ.P. We affirm the judgment and remand for redetermination of the attorney fee award.

Scanson Trucking sued Farmers Elevator, Inc. of Grace City (Farmers Elevator); Farmers Trucking, and Larry O'Brien, for damages of $9,582.50 to its truck, a 1975 International Harvester Transtar Tractor. In count one of its complaint, Scanson Trucking alleged that *Farmers Elevator* borrowed the truck through its employee, O'Brien, who negligently damaged the truck in an accident. In count two of its complaint, Scanson Trucking alleged that *Farmers Trucking* borrowed the truck through its employee, O'Brien, who negligently damaged the truck in an accident. Scanson Trucking's insurer, Great West Casualty Company, paid Scanson Trucking for the loss, less a $250 deductible.

Farmland Mutual Insurance Company (Farmland), Farmers Elevator's insurer, initiated a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify Farmers Elevator or

Larry O'Brien and that State Farm, if anyone, had that duty.

State Farm moved for a summary judgment determining that it had no duty to defend or indemnify Farmers Trucking or Larry O'Brien. Farmers Trucking filed a cross-motion for summary judgment determining that State Farm had a duty to defend or indemnify Farmers Trucking or Larry O'Brien. Farmers Trucking also requested that State Farm be ordered to pay costs and attorney fees pursuant to Rule 11, N.D.R.Civ.P. The trial court denied State Farm's motion, granted Farmers Trucking's motion, and ordered State Farm to pay Farmers Trucking $657.25 in attorney fees. Judgment was entered accordingly and State Farm appealed.

State Farm asserts that the trial court erred in determining that it had a duty to defend and indemnify Farmers Trucking against all claims and liability arising out of the accident involving Scanson Trucking's truck and that the trial court erred in entering judgment against it for Farmers Trucking's attorney fees.

At the time of the accident, Farmers Trucking was insured under a policy issued by State Farm. The insured vehicle described on the declarations page was a 1981 Peterbuilt semi-tractor, and, through a trailer endorsement, a Merritt trailer. The insurance policy included liability coverage and collision coverage.

The policy contained the following definitions:

"*Car*—means a land motor vehicle with four or more wheels, which is designed for use mainly on public roads. It does not include:

\*   \*   \*   \*   \*   \*

"2. a truck-tractor designed to pull a trailer or semi-trailer." (Emphasis in original.)

"*Temporary Substitute Car*—means a *car* not owned by *you* or *your spouse,* if it replaces *your car* for a short time. Its use has to be with the consent of the owner. *Your car* has to be out of use due to its breakdown, repair, servicing, damage or *loss.* A *temporary substi-*

*tute car* is not considered a *non-owned car."* (Emphasis in original.)

"*You* or *Your*—means the named insured or named insureds shown on the declarations page." (Emphasis in original.)

"*Your Car*—means the *car* or the vehicle described on the declarations page." (Emphasis in original.)

The trailer endorsement covering the Merritt trailer provides:

"The definition of *Temporary Substitute Car* is changed to read:

"*Temporary Substitute Car*—means:

"1. a *car* or

"2. a trailer of the same type as above not owned by *you* or *your spouse,* if it replaces *your car* or the described trailer for a short time. Its use has to be with the consent of the owner. *Your car* or trailer has to be out of use due to its breakdown, repair, servicing, damage or *loss.* A *temporary substitute car* is not considered a *non-owned car."* (Emphasis in original.)

The liability (Coverage A) section of the insurance policy provides:

"We will:

"1. pay damages which an *insured* becomes legally liable to pay because of:

\*   \*   \*   \*   \*   \*

"b. damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car;* and

"2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.

\*   \*   \*   \*   \*   \*

"The liability coverage extends to the use, by an *insured,* of ... a *temporary substitute car* ..." (Emphasis in original.)

The liability (Coverage A) section of the insurance policy also provides:

"THERE IS NO COVERAGE:

\* \* \* \* \* \*

"3. FOR ANY DAMAGES:

\* \* \* \* \* \*

"b. TO PROPERTY OWNED BY, RENTED TO, IN CHARGE OF OR TRANSPORTED BY AN *INSURED*. But coverage applies to a rented residence or private garage damaged by a *car* we insure." (Emphasis in original.)

Section IV of the policy provided Farmers Trucking with collision (Coverage G) insurance. Section IV provides:

"*Loss*—means, when used in this section, each direct and accidental loss of or damage to:

"1. *your car;*

\* \* \* \* \* \*

"We will pay for *loss* to *your car* caused by *collision* but only for the amount of each such *loss* in excess of the deductible amount. . . .

"The coverages in this section *you* have on *your car* extend to a *loss* to . . ., a *temporary substitute car . . .*

"*If There Is Other Coverage*

\* \* \* \* \* \*

"3. Temporary Substitute Car, . . .

"If a *temporary substitute car*, . . . has other coverage on it, this coverage is excess. . . ." (Emphasis in original.)

This court held in Syllabus 2, *Kyllo v. Northland Chemical Co.*, 209 N.W.2d 629, 631 (N.D.1973):

"2. A liability insurer's obligation to defend its insured is measured by the terms of the insurance policy and the pleading of the claimant who sues the insured; if the allegations in the claimant's complaint would support a recovery upon a risk covered by the insurer's policy the duty to defend is present. If there is doubt as to whether the duty to defend is present, such doubt will be resolved in favor of the insured."

State Farm first asserts that it had no duty to defend Farmers Trucking because the borrowed truck was not a temporary substitute car as defined in the insurance policy. State Farm argues that the definition of "temporary substitute car" in the trailer endorsement requires that a temporary substitute car must be a "car," which is defined in the policy to exclude "a truck-tractor designed to pull a trailer or semi-trailer." Because the borrowed truck was a truck-tractor designed to pull a semitrailer, State Farm argues it was not a temporary substitute car to which the insurance applied.

■ The purpose of a temporary substitute vehicle provision is to extend temporary protection to an insured who is unable to use an insured vehicle because of its breakdown, repair, servicing, damage or loss. *Fulton v. Woodford*, 17 Ariz.App. 490, 498 P.2d 564 (1972); 6B *Appleman Insurance Law and Practice* § 4293.5 (Buckley Ed.1979); 12 *Couch on Insurance 2d* § 45:219 (1981 Rev.Ed.). "It indicates the intention of the insurer to cover only one automobile of the insured and to avoid covering more than one automobile for a single premium." 12 *Couch on Insurance 2d, supra,* at p. 511. "It is contemplated that the same use will be made of the substituted vehicle as would have been made of the one originally insured." 6B *Appleman Insurance Law and Practice, supra,* at p. 217. *See also* 12 *Couch on Insurance 2d, supra,* § 45:232.

"A substitute coverage clause is for the benefit of the insured. Accordingly, if any construction is required of a substitute clause, it should be for his benefit. At the same time, ambiguity is not to be found where none exists, and the contract must be interpreted as written, and the substitution provision is neither to be unreasonably extended to materially increase the risk contemplated by the insurer, nor is it to be narrowly applied against the insured, inasmuch as the clause is designed for his protection." 12 *Couch on Insurance 2d, supra,* § 45:221, at p. 513. *See also State Farm Mutual Automobile Ins. Co. v. Johnston,* 9 Cal.3d 270, 107 Cal.Rptr. 149, 507 P.2d 1357 (1973); *Transit Casualty Co. v. Gif-*

*fin,* 41 Cal.App.3d 489, 116 Cal.Rptr. 110 (1974); *Holland America Ins. Co. v. Baker,* 272 Minn. 473, 139 N.W.2d 476 (1965); *Nelson v. St. Paul Mercury Ins. Co.,* 83 S.D. 32, 153 N.W.2d 397 (1967).

The evident purpose of securing the underlying insurance policy was to insure Farmers Trucking's 1981 Peterbuilt semi-tractor and a substitute therefore if the insured semi-tractor was out of use due to its breakdown, repair, servicing, damage or loss in order to protect Farmers Trucking from liability for bodily injury or damage to the property of others. The evident purpose of securing the trailer endorsement was to insure the Merritt trailer and a trailer substitute therefore if the insured trailer was out of use due to its breakdown, repair, servicing, damage or loss. The two definitions of temporary substitute car in the underlying policy and in the trailer endorsement are the same except that the trailer endorsement adds to the term "car" a "trailer of the same type" as the insured trailer. The definition in the trailer endorsement merely provides that a substitute trailer is covered, as well as a substitute car.

■ Standing alone, perhaps the definition of "temporary substitute car" might, as State Farm argues, clearly and unambiguously exclude a truck-tractor designed to pull a semitrailer. In this case, however, we believe an ambiguity arises from the fact that the principal vehicle insured was itself a truck-tractor designed to pull a semitrailer. One could conclude that the parties intended that the insured truck-tractor was covered, although it was not a "car" as defined in the policy, but that another truck-tractor substituted therefor was not intended to be covered. Alternatively, one could conclude that the parties intended that the insured truck-tractor was to be covered and that another truck-tractor substituted therefor was also intended to be covered.

"[A]ny ambiguity or reasonable doubt as to the meaning of the policy is to be strictly construed against the insurer and in favor of the insured. If the language in an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted." *Emcasco Ins. Co. v. L & M Development, Inc.,* 372 N.W.2d 908, 910 (N.D.1985) [quoting *AID Ins. Services, Inc. v. Geiger,* 294 N.W.2d 411, 414 (N.D.1980)]. *See also Heitkamp v. Milbank Mutual Ins. Co.,* 383 N.W.2d 834 (N.D.1986). We therefore construe the ambiguity created by State Farm in insuring a truck-tractor with a policy excluding truck-tractors by definition in favor of the insured to impose liability upon the insurer. Such a construction accords with the insurer's intent to cover only one vehicle for a single premium and with the insured's intent to have a substitute covered while the principal insured vehicle is out of use due to its breakdown, repair, servicing, damage or loss. Because both vehicles were truck-tractors put to the same use, our construction of the policy does not materially increase the risk contemplated by the insurer. We hold that the definition of "temporary substitute car" does not preclude liability as a matter of law, as argued by State Farm. If the borrowed truck-tractor was put to the same use as the insured truck-tractor and was used by Farmers Trucking because its insured truck-tractor was out of use due to its breakdown, repair, servicing, damage or loss, the borrowed truck-tractor was a "temporary substitute car."

■ State Farm next argues that even if the borrowed truck qualified as a temporary substitute car, liability and a duty to defend are still excluded because the borrowed truck was "in charge of" the insured. State Farm relies on *State Farm Mutual Ins. Co. v. Dorough,* 277 Ala. 662, 174 So.2d 303 (1965); *Farm Bureau Ins. Co. v. Lubin,* 265 Ark. 536, 580 S.W.2d 447 (1979); *Matheney v. Farmers Ins. Co.,* 266 Ark. 773, 586 S.W.2d 246 (1979); *Herrman v. Folkerts,* 202 Kan. 116, 446 P.2d 834 (1968); *Wyatt v. Wyatt,* 239 Minn. 434, 58 N.W.2d 873 (1953); *Wyse v. Dixie Fire & Casualty Co.,* 242 Miss. 508, 136 So.2d 578 (1962); *MacDonald v. Hardware Mutual Casualty Co.,* 105 N.H. 458, 202 A.2d 489 (1964); *National Surety Co. v. Allstate Ins. Co.,* 115 N.J.Super. 528, 280 A.2d 248

(Law Div.1971); *Torrington Co. v. Aetna Casualty & Surety Co.*, 264 S.C. 636, 216 S.E.2d 547 (1975); *Security Mutual Casualty Co. v. Johnson*, 584 S.W.2d 703 (Tex. 1979); and *Mallory v. Vermont Mutual Fire Ins. Co.*, 126 Vt. 237, 226 A.2d 901 (1967), for the propositions that the "in charge of" clause is unambiguous and excludes coverage for damage to the Scanson Trucking truck borrowed by Farmers Trucking with the permission of Scanson Trucking.

We note that in none of the decisions relied upon by State Farm did the court address the effect of an "in charge of" exclusion on a provision affording liability coverage on a temporary substitute car. We also note that, while the courts deciding those cases did not find the exclusion to be ambiguous, one court has found the exclusion to be "imprecise" and held that the "exclusion would apply to property of which the insured was a bailee or 'in charge of,' *other than automobiles.*" *American Casualty Co. of Reading, Pa. v. Aetna Casualty & Surety Co.*, 251 Md. 677, 248 A.2d 487, 491 (1968) (Emphasis in original) [overruled, in part, on other grounds in *State Automobile Mutual Ins. Co. v. Williams*, 268 Md. 535, 302 A.2d 627, 632 (1973)].

"Limitations or exclusions from broad coverage must be clear and explicit." *Emcasco Ins. Co. v. L & M Development, Inc.*, *supra*, 372 N.W.2d at 911. State Farm provided Farmers Trucking broad coverage when it undertook to "pay any damages which an *insured* becomes legally liable to pay because of: ... damage to or destruction of property ... caused by accident resulting from ... use of *your car*" (or a temporary substitute car, through the extension previously quoted) and to "defend any suit against an *insured* for such damages." (Emphasis in original.)

While the policy defines many terms, such as "car," "you," "your," "your car,"

and "temporary substitute car," it does not define either the "property" that is intended to be covered if the insured becomes legally liable to pay damages for damaging or destroying it or the "property" that is intended to be excluded from coverage if damaged while in charge of the insured. The broad coverage for damage to property caused by accident resulting from the insured's use of a temporary substitute car is not necessarily overcome by an exclusion of property in charge of an insured. The exclusion neither defines the property excluded nor mentions automobiles or temporary substitute cars, for which coverage has been afforded and for damage to which an insured can become "legally liable to pay." At the very least, the exclusion from the broad coverage granted is not "clear and explicit." *Emcasco, supra.* We must resolve any doubt as to whether or not State Farm has a duty to defend Farmers Trucking in favor of the insured. *Kyllo v. Northland Chemical Co., supra.*

For the reasons stated, we conclude that the trial court did not err in determining that State Farm has a duty to defend or indemnify Farmers Trucking. That conclusion renders it unnecessary for us to address Farmers Trucking's assertion that State Farm must defend because Farmers Trucking also had collision coverage. For the same reason, we need not address State Farm's assertion that the collision coverage was excluded because Scanson Trucking had its own insurance and was paid for its loss by its insurer.

◼ In its brief in support of its cross motion for summary judgment and in opposition to State Farm's motion for summary judgment, Farmers Trucking requested attorney fees incurred in defending against State Farm's motion.

Citing Rule 11, N.D.R.Civ.P.,[1] the trial court required State Farm to pay Farmers

---

1. An award of attorney fees in a case such as this might, perhaps, be appropriate for reasons other than Rule 11, N.D.R.Civ.P. *See, e.g., Connecticut Fire Ins. Co. v. Reliance Ins. Co. of Madison, Wis.*, 208 F.Supp. 20, 27 (D.Kan.1962) (insurer's declaratory judgment action constitut-

ed a "request" and it was liable for attorney fees incurred by the insured under a policy provision requiring the insurer "to reimburse the insured for all reasonable expenses, ..., incurred at the company's request."); 7C, *Appleman Insurance Law and Practice* § 4691, p. 283

Trucking "the sum of $657.25 as reasonable attorney's fees incurred in the defense of this matter." State Farm asserts that the trial court erred in rendering judgment against it for Farmers Trucking's attorney fees.

The trial court did not give any reasons for its action. The trial court's failure to state its rationale in awarding attorney fees renders it "impossible for this Court on appeal to appropriately review the trial court's determination." *Arneson v. City of Fargo*, 331 N.W.2d 30, 40 (N.D.1983). *See also Herzog v. Yuill*, 399 N.W.2d 287 (N.D.1987); *All Seasons Water Users Ass'n, Inc. v. Northern Improvement Co.*, 399 N.W.2d 278 (N.D.1987). We therefore remand on the issue of attorney fees for the trial court "to make a redetermination which is based upon an expressed rationale." *Arneson, supra*, 331 N.W.2d at 41.

Farmers Trucking has requested that we impose sanctions under Rule 38, N.D.R. App.P. We do not deem State Farm's appeal to be frivolous and we deny the request.

For the reasons stated, the summary judgment is affirmed and the matter of attorney fees is remanded for redetermination.

VANDE WALLE and LEVINE, JJ., concur.

MESCHKE, J., concurs fully, except that he would affirm the award of attorney fees below as well as award them on this appeal.

GIERKE, J., concurs in the statement by MESCHKE, J.

(Berdal Ed.1979) ("After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof.... If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above."). *See also Upland Mutual Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974); *Farmers Ins. Co. of Washington v. Rees*, 96 Wash.2d 679, 638 P.2d 580 (1982); Annot., *Insured's Right to Recover Attorneys' Fees Incurred In Declaratory Judgment Action to Determine Existence of Coverage Under Liability Policy*, 87 A.L.R.3d 429 (1978).